UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x



PAUL SHAHINIAN AND STEVEN SHAHINIAN,
AS EXECUTORS OF THE ESTATE OF
ANTRANIG SHAHINIAN,

                Plaintiffs,                05 Civ. 7105 (PKC)

     -against-                      MEMORANDUM
                                     AND ORDER

HAGOP TANKIAN, et al.,

                Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

        The parties have presented to this Court a discovery dispute pursuant to Rule 37(a)(2)(B), Fed. R. Civ. P., Local Rule 37.2 and paragraph 8 of my Order of June 21, 2006 (Docket # 26) concerning the application of the crime/fraud exception to the attorney-client privilege. I have received a 22-page Joint Letter, dated April 30, signed by counsel for each side presenting their client's positions, which followed a meet and confer session between counsel.

        In the main, the litigation—as well as this discovery dispute—concerns the ownership, transfer by gift or sale and valuation of paintings by the Armenian artist, Hovsep Pushman. Armand and Arsene Pushman were his sons and inherited many of their father's works. Arsene died in 1990 and his brother, then 89 years old, was named executor of his estate. A family friend, Lucy Ishkanian, assisted Armand with matters of estate administration, held his power of attorney and worked directly with the law firm of Weil, Gotshal & Manges LLP ("WGM"), who represented Arsene's estate.[1] On January

---
[1] None of the parties address whether, under New York law, a fiduciary such as an executor of an estate may validly delegate his powers via a power of attorney.

8, 1999, Armand died and Ms. Ishkanian was named executrix of his estate and WGM also became counsel for Armand's estate.

Briefly, plaintiffs/third-party defendants, referred to herein as the Shahinians, invoke the crime/fraud exception to the attorney-client privilege as to communications between WGM and either Mr. Armand Pushman or Ms. Ishkanian on matters relating to the ownership, value and transfer of certain paintings, which were falsely reported or wrongfully omitted from income tax, estate tax returns or other statements made to the IRS. The declaration of Andrew S. Kent, Esq., counsel for the Shahinians, annexes excerpts from depositions, deposition exhibits, declarations and responses to interrogatories and privilege logs. The Shahinians argue that the evidence they have presented demonstrates that a fraud and crime have been committed—the filing and/or providing of materially false information to the IRS—and that attorney-client communications have been used to facilitate or commit the fraud and crime. The record before me contains the estate tax return of the estate of Armand Pushman, written statements made to the IRS in the course of an audit of that return and the income tax returns of Armand Pushman and applications made to the IRS for extensions of time to pay certain taxes due from the estate of Arsene Pushman. It also contains excerpts from the depositions of several witnesses and documentary evidence demonstrating material variances between the statements made to the IRS and the actual facts.

I have reviewed approximately 86 documents that had been tendered for <u>in camera</u> review from the files of WGM and a declaration from Ms. Ishkanian.

I conclude that the crime/fraud exception has been properly invoked and order the production of documents and answers to deposition questions.[2]

The Scope of the Privilege and the Crime/Fraud Exception

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007) (citing United States v. Const. Prod. Research, Inc., 73 F.3d 464, 473 (2d Cir.1996)). The crime/fraud exception comes into play only as to materials that are, in fact, protected by the attorney-client privilege. Here, as the Shahinians argue, much of the information sought is likely not to be privileged.[3]

Information conveyed to a lawyer by a client solely for the purpose of retransmission to a third-party is generally not protected by the attorney-client privilege, and the result is no different when the third-party is the IRS and the means of retransmittal is a tax return. See Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962) ("Not all communications between an attorney and his client are privileged. Particularly in the case of an attorney preparing a tax return . . . , a good deal of information transmitted to an attorney by a client is not intended to be confidential, but rather is given for transmittal by

---

[2] This Order should not be construed to abrogate any valid invocations of the Fifth Amendment. That issue is not before me, and I express no views on the subject.

[3] Based upon an in camera review of the documents set forth on the "Further Revised Privilege Log," a great many of the documents are one sentence letters transmitting a statement for services and contain no privileged information. (E.g., WGM 007552-53, WGM 007673-75, WGM 007679-81, WGM 007691-92, WGM 007696, WGM 007698-700, WGM 007703, WGM 007728-29, WGM 007731-32, WGM 007734, WGM 007737, WGM 007740, WGM 007757, WGM 007759-60). They are not privileged and are to be produced. Other documents are transmittals of information or documentation with no arguable conveyance of confidential information or request for or communication of legal advice. (E.g., WGM 007414, WGM 007421, WGM 007423, WGM 007429-30, WGM 007433-34, WGM 007490, WGM 007526-30, WGM 007550, WGM 007676). They are also not privileged and are to be produced.

the attorney to others—for example, for inclusion in the tax return. Such information is, of course, not privileged."). The Seventh Circuit's opinion in United States v. Lawless, 709 F.2d 485, 488 (7th Cir. 1983), contains broad language that "information transmitted for the purpose of preparation of a tax return, though transmitted to an attorney, is not privileged information."[4] A schedule of an estate's assets or expenses transmitted to an attorney by a client with the understanding that the attorney would do nothing more than reformat the information and present it to the IRS on a tax return, would not, for example, satisfy the confidentiality element of the privilege. But the issue is not so simple in other areas of tax law. Confidential communications between attorney and client on such subjects as how to reflect on the face of a tax return the results of two conflicting appraisals, whether a transfer meets the requirements of an inter vivos gift or whether income was in actuality realized on a particular transaction, ought not lose their privileged character merely because the results of the attorney-client discussion will find their way to a line of a tax return. The determinative question is whether the information was conveyed by the client to the attorney in confidence for the purpose of obtaining legal advice and not merely for the purpose of retransmittal to a third-party. Cf. Colton, 306 F.2d at 639.

The privilege issues at stake on this motion are not principally presented in the documents but in the questions sought to be posed of the witnesses. The issues cannot be adequately resolved by simply distinguishing between information designated for retransmittal versus bona fide requests for legal advice. The heart of the matter lies in

---

[4] Cf. United States v. Davis, 636 F.2d 1028, 1043 (5th Cir. 1981) ("Neither category of documents [workpapers in the course of preparing tax returns and the tax records] is privileged, because although preparation of tax returns by itself may require some knowledge of the law, it is primarily an accounting service. Communications relating to that service should therefore not be privileged, even though performed by a lawyer.")

whether a fraud or crime was likely committed and whether the client intentionally utilized the lawyer, albeit unwittingly as far as the lawyer is concerned, to facilitate that fraud or crime.

"A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). "First, the proposed factual basis must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" Id. (quoting In re John Doe, 13 F.3d 633, 637 (2d Cir. 1994)). It is not sufficient to show that the privileged material "might provide evidence of a crime or fraud." In re Richard Roe, Inc., 168 F.3d 69, 71 (2d Cir. 1999). Rather, the communication itself must have been in furtherance of a fraud or crime and must have been intended to facilitate the fraud or crime. Jacobs, 117 F.3d at 88 (quoting United States v. White, 887 F.2d 267, 271 (D.C. Cir.1989) (Ruth Bader Ginsburg, J.)). It is not necessary to show that the attorney was aware of the improper purpose. In re Grand Jury, 731 F.2d 1032, 1038 (2d Cir. 1984). Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the evidence lies in the discretion of the district court. Jacobs, 117 F.3d at 87 (citing United States v. Zolin, 491 U.S. 554, 572 (1989)). "[I]f and when there has been an in camera review, the district court exercises its discretion again to determine whether the facts are such that the exception applies." Id.

I have engaged in an in camera review of the documents and have found that review, in isolation, to be rather unhelpful in resolving the applicability of the crime/fraud exception. No criminal activity leaps from the pages of the tendered documents. That is quite different than concluding that no criminal activity occurred. The client has likely committed a crime to the extent that he or she knowingly transmits false information to the attorney which the client knows will be submitted to the IRS, contingent only on whether the attorney, unaware of the falsity, confirms that it needs to be disclosed to the IRS. The proper application of the crime/fraud exception negates the client's ability to use the privilege to cast doubt on whether the information received by the IRS was different from that which the client had originally transmitted to the attorney. Of course, the reasonable basis for concluding that the crime occurred and that the attorney was used to commit or facilitate the crime must first be established, as it has been in this case; the exception is never properly used to probe the possibility of a crime.

Apart from the in camera document review, Ms. Ishkanian has offered to make herself available for an in camera "interview." No restrictions had been placed upon her ability to submit a declaration, whether in camera or otherwise. Indeed she has submitted a declaration (not in camera) and documents (in camera). In the exercise of discretion, I conclude that in camera "interviews" are unnecessary in this case, because the crime/fraud asserted here is provable by comparing the estate and income tax returns and other communications with the IRS with the information collaterally developed in discovery. See United States v. Kaplan, No. 02 Cr. 883(DAB), 2003 WL 22880914 (S.D.N.Y. Dec. 5, 2003) (noting that when "independent evidence supports a finding of probable cause . . . in camera review is not necessary"). These materials cast significant

doubt on the truthfulness of the statements made to the IRS, and the circumstances are sufficient to support the conclusion that communications with WGM were intended to facilitate the crime or fraud.

Application of Standards to Facts

As more fully discussed below, the Shahinians have come forward with non-privileged evidence that statements made by Ms. Ishkanian and Mr. Armand Pushman to the IRS on estate and income tax returns, IRS extension requests and written responses to IRS inquiries were likely to have been materially and knowingly false. False or fraudulent statements to the IRS on a return or other document is punishable as a crime. 26 U.S.C. §§ 7206-07. The vehicle used to communicate these false statements were returns prepared by WGM or statements made on behalf of Ms. Ishkanian and Mr. Armand Pushman by WGM. Thus, the Shahinians have demonstrated that the law firm was used in furtherance of and to commit or facilitate the fraud or crime.

Notably, in response to the significant array of non-privileged material demonstrating the falsity of the statements, Ms. Ishkanian has declined to offer a substantive response. Instead, her declaration of April 28, 2007 speaks principally to her expectation of confidentiality surrounding her attorney-client communications with WGM, which is largely beside the point with respect to the crime/fraud exception to the privilege.

I now turn to the specifics of the false statements.

1. Testimony taken in this case tends to show that many of the Pushman paintings that were part of the estate of Arsene were omitted from a Sotheby's appraisal and, by reason of this important omission, were thereafter omitted from the

estate tax return filed with the IRS. Ms. Ishkanian and Mr. Armand Pushman knew of the omissions. Neither Ms. Ishkanian nor Mr. Armand Pushman ever informed WGM of any such omissions. For the limited purpose of this discovery dispute, I conclude that plaintiffs have demonstrated that there is probable cause to believe that a fraud has been committed and that communications between Ms. Ishkanian and Mr. Armand Pushman and WGM were in furtherance of the fraud and intended to facilitate the fraud. Jacobs, 117 F.3d at 87. Accordingly, all communications between Ms. Ishkanian and/or Mr. Armand Pushman and WGM concerning the Sotheby's appraisal or the valuation of any paintings of Hovsep Pushman are non-privileged; all documents are to be produced and all deposition questions on the subject are to be answered.

        2.      In the period of 1991 to 1993, Ms. Ishkanian, pursuant to Armand's Power of Attorney, sold 12 Pushman paintings. She reported to the lawyer at WGM that 10 of the paintings were sold at prices totaling $105,000. The plaintiffs have come forward with documentary evidence which tends to prove that those ten paintings were sold at prices totaling $187,000, which is an amount $82,000 greater than reported to WGM and, thereafter, to the IRS. Again, I conclude that plaintiffs have satisfied the standard articulated in Jacobs. Accordingly, all communications between Ms. Ishkanian and WGM concerning the sale of any paintings between 1991 and 1993 and the IRS reporting thereof are non-privileged; all documents are to be produced and all deposition questions on the subject are to be answered.

        3.      In 1994, Ms. Ishkanian sold 14 paintings to Mr. Tracey Pulvers. A bill of sale reflects a sales price of $220,000 for 10 of the 14 paintings with $132,500 of this sales price allocated to Mr. Armand Pushman and $47,500 to Ms. Ishkanian and

$40,000 to Mr. Hagop Tankian. The evidence is that WGM was told by Ms. Ishkanian that the sales price was $132,500 when in truth it was $220,000. Inferentially, her purpose was to deceive the IRS. There is also a discrepancy between a certain grouping of sales prices and the amount due the IRS on Arsene's estate's one-half interest in those sales. I am satisfied that the Jacobs standard is satisfied as to the paintings sold by Ms. Ishkanian in 1994. Accordingly, all communications between Ms. Ishkanian and/or Mr. Armand Pushman and WGM concerning any sales of paintings in 1994 and the IRS reporting thereof are non-privileged; all documents are to be produced and all deposition questions on the subject are to be answered.

    4.  The evidence supports the conclusion that Mr. Armand Pushman sold 30 paintings to Mr. Tankian on or about January 30, 1995 for a total price of $144,000. The IRS was told that no paintings were sold during 1995. In 1996, Ms. Ishkanian sold 26 paintings on behalf of Mr. Armand Pushman for a total price in excess of $750,000. The IRS was told that no paintings were sold during 1996. WGM was the medium through whom Ms. Ishkanian and Mr. Armand Pushman communicated with the IRS. I conclude the Jacobs standard is met as to communications concerning the foregoing. Accordingly, all communications between Ms. Ishkanian and/or Mr. Armand Pushman and WGM concerning the sales prices and IRS reporting of these 30 paintings sold in 1995 and 26 sold in 1996 are non-privileged; all documents are to be produced and all deposition questions on the subject are to be answered.

    5.  Following the death of Mr. Armand Pushman, WGM forwarded to the IRS Armand's income tax return for 1998 which was signed by Ms. Ishkanian, as executrix. The tax return reported that 48 paintings were sold by Armand in 1998 for

$403,000. The evidence supports the conclusion that fewer than the 48 were sold by Ms. Ishkanian for over $1,400,000, thereby tending to establish that Ms. Ishkanian had grossly understated to the IRS the actual sales prices. Also, some of the paintings reported to have been sold in 1998 were known by Ms. Ishkanian to have been sold in years prior to 1998. The Jacobs standard is amply met. Accordingly, all communications between Ms. Ishkanian and WGM concerning the sales prices and IRS reporting of the paintings reflected on the 1998 income tax return of Mr. Armand Pushman are non-privileged; all documents are to be produced and all deposition questions on the subject are to be answered.

    6. Ms. Ishkanian has claimed in this lawsuit that 44 paintings which she inherited from Armand Pushman were wrongfully taken by Antranig Shahinian in 2001 through 2003, yet the paintings are not listed on the estate tax return of the estate of Armand Pushman signed by Ms. Ishkanian on or about April 7, 2000. It also appears from an October 10, 2006 declaration in this case and based upon an inspection in this case that there are other Pushman paintings that Ms. Ishkanian claimed to have inherited from Armand that are not disclosed on the estate tax return that she signed as executrix. Further, there is evidence that several of the paintings listed on the estate tax return actually had been sold prior to an appraisal used for estate tax purposes and that those paintings are valued on the estate tax return for less than the actual sales price. The Jacobs standard is met. Accordingly, all communications between Ms. Ishkanian and WGM concerning Pushman paintings owned in whole or in part by Mr. Armand Pushman as of the date of his death and/or the reporting vel non of Pushman paintings on the estate

tax return of the estate of Armand Pushman are non-privileged; all documents are to be produced and all deposition questions on the subject are to be answered.

       7.     The 2000-02 audits and follow up inquires by the IRS of the Armand Pushman estate were infected by the frauds recounted above. Again the Jacobs standard is met. Accordingly, all communications between Ms. Ishkanian and WGM concerning any IRS inquiry or audit concerning the estate tax return of the estate of Armand Pushman are non-privileged; all documents are to be produced and all deposition questions on the subject are to be answered.

       8.     The May 8, 1999 letter to Ms. Ishkanian (WGM 007695) is not reasonably related to the facts underlying the crime/fraud exception and I will not order it produced.

Conclusion

In each instance noted in paragraphs 1 through 7 above, a prudent person would have a reasonable basis to suspect that a crime had been committed, i.e., a false statement or filings with the IRS, 26 U.S.C. §§ 7206-07. I also conclude that, in each such instance, the communications with the law firm were likely to have been in furtherance of the crime and for the purpose of committing or facilitating the crime. The crime/fraud exception to the attorney-client privilege has been established and documents and testimony are ordered to the extent noted above. It is important to note that the fact that a client has utilized the services of an attorney to perpetrate a fraud does not establish that the attorney was a knowing participant in the client's fraud. A fraud-doer will often wish to hide his or her misdeeds from the lawyer and use the lawyer as the vehicle to

unknowingly communicate the false information to others.  Except to the extent noted

above, all other relief sought by any party is denied.

       SO ORDERED.

                                            P. Kevin Castel
                                      United States District Judge

Dated:  New York, New York
        May 7, 2007